So our first case is the United States v. John Joseph Krasley. Mr. Epstein, how are you, sir? I'm good, thank you, Your Honor. Good morning, and may it please the Court. My name is Robert Epstein. I'm here today on behalf of the appellant, Mr. John Krasley. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Thank you, Your Honor. The issue on this appeal concerns the District Court's admission of prior acts evidence pursuant to Federal Rule of Evidence 404B. We submit that the admission of this evidence was erroneous for three reasons. First, as the government now concedes in its brief, the government did not prove that Mr. Krasley committed these prior acts. Yet, the prosecutor argued in closing, for all intents and purposes, that he did. Second, there is an unstated propensity link at the core of the government's theory of relevance that went unrecognized in this case. And third, the District Court's 403 balancing was legally inadequate. The Court failed to recognize the limited probative value of this evidence, given that the government had not proven that Mr. Krasley committed these prior acts, and the Court completely failed to balance the extreme prejudice that this evidence carried. If I may begin with the first of these points, the government concedes at pages 25 and 35 of its brief that the government did not prove that Mr. Krasley committed these prior acts. Yet, if we look at the prosecutor's closing, for all intents and purposes, the prosecutor argued to the jury that Mr. Krasley did. You know, there's an awful lot of circumstantial evidence of where he was when there were transmissions or receipts in his house, whether he was home, whether he wasn't home, which very much support the government's position that it's only when he was there that these transmissions were received and sent. Yes, Your Honor. I think Your Honor's question goes to the harmless error point. If this error was erroneously admitted, was the government's circumstantial case strong enough that this error could possibly be considered harmless? And I would submit the answer to that is no. Well, let me ask you another question. As you know, I was a district judge for many years. And if this evidence had come before me, the question of the prior receipts, I would have looked at Mr. Krasley's direct testimony. Have you ever at any point in your life used a computer to upload or download child pornography at any point? Answer, no, I have not. I never sent or received child pornography from any of my computers or over my Internet. Well, I would admit it as impeachment evidence for the fact that he's testifying that no computer in his house had ever been used for that purpose. Yes, Your Honor. There's two problems with that. First of all, that's not an argument that the government made below. It's not an argument that they've made on this appeal. The second problem with that is, as I said, the government didn't prove and the government concedes that it did not prove that Krasley committed these prior acts. So the evidence would not actually be valid as impeachment evidence absent proof that Krasley actually committed these. Well, it is impeachment of Krasley's statement under oath that he never used his computers to send or receive child pornography. But this is proof that that computer was used to send and receive child pornography. With all due respect, Your Honor, the government concedes that it did not prove that Krasley was the one who did so. So it wouldn't be an impeachment of Krasley's testimony that he never did so. Now, was there was there a matter of credibility in this case? Because wasn't there sufficient evidence before the jury to find that he was indeed viewing pornographic material? He was convicted, wasn't he? Of course, Your Honor. And we haven't raised the sufficiency issue. We've raised the 404 B issue. And there are two very, very different issues in all of these. This court's case is where it has reversed convictions. We cite seven of them in our briefs. In all of those cases, the evidence was sufficient that the defendant committed the offenses with which he was charged. The question was whether the convictions could stand given the erroneous admission of the 404 B evidence. And in all of those cases, this court found that the error was prejudicial. What specifically was erroneous in admitting the error? What evidence was erroneously admitted? Well, both of the items of prior acts evidence in this case. Sir, there was a thumb drive that was found which had two deleted files on it, videos on it. The agents were unable to see what those videos were, but they were able to see what the titles of the videos were. And they were suggestive of child pornography. There's two problems with that, though. One is, again, the government says they could not prove that Presley had anything to do with those deleted videos on the thumb drive. But they were in his possession, were they not? The thumb drive was found in his basement in 2018. The government did not find them when they searched the house in 2013. The videos were put on in 2010 and deleted in 2012. So the case agent testified that we have no idea who's responsible for this. They could not say that Presley was responsible for it. The government concedes that. The government concedes that the prior bad acts at issue here cannot be tethered to Presley, correct? Yes. And so your position is that they brought this, the government's suggestion that it was introduced for location, simply a proxy for propensity. And a proxy for the perpetrator of the crime. The identification. But there is a unstated propensity link at the core of the government's theory. The theory, you know, which was stated in the passive tense of meeting an actor, which I've never seen before, once we put an actor into the proffer, it's clear that there's a propensity link. So the government says it's not Presley, so let's imagine that it's Person X. Person X was responsible for the thumb drive and the IRC checks concerning the possible trading of child pornography. Person X did this in 2010 in Presley's home. The government says you can infer from that that the instant offenses also occurred in Presley's home. But there's three necessary links there. That Person X continued to have access to Presley's home. That Person X has a propensity, a character flaw that he likes to look at child pornography. And that Person X then did so to commit the charged offenses. So let's assume Mr. Zosmer stands up and says, I understand everything Mr. Epstein is saying. And hypothetically, I agree with Mr. Epstein. But look, he was cross-examined on this. The jury was presented with this evidence. At the end of the day, it's harmless. What do we do with that? Your Honor, it's not harmless. It's extremely prejudicial. Well, isn't it a question of the discretion of the district judge? Well, as this court has recognized repeatedly, if the district court judge doesn't do a proper 404B analysis and a proper 403 analysis, then this court undertakes plenary review. So, for example, in United States v. Smith, a decision that Judge Fuentes, you wrote, and Judge Roth, you were on the panel on, this court found there that as a matter of law exercising plenary review, the district court had not engaged in a proper 404B analysis, and that the evidence in that case, the prior act's evidence in that case, was erroneously admitted as a matter of law. It didn't have a proper 404B purpose this court held. Presley testified in his own defense, didn't he? Yes, Your Honor. And, of course, the jury, in cases like this, looks at the demeanor and the appearance of the witness as the witness testifies, takes all that into account, and they apparently determined that he was not completely believable and made a determination on the basis of the evidence that he was viewing pornographic material. Yes, Your Honor. It's very difficult to overturn a verdict like that. Unfortunately, their determination could well have been influenced by this 404B evidence because, as the district court judge said in initially considering this at trial, said this is extremely prejudicial. This is the only thing that puts child pornography in this man's home. So this is extremely prejudicial evidence. Could the evidence be used strictly for impeachment purposes? No. I mean, for two reasons, again. First of all, that wasn't a theory that the government suggested at trial. And in that regard, in United States v. Penny, this court said when 404B evidence comes in under a particular theory of relevance, we're not going to consider other theories because it really doesn't matter. The jury was instructed on this particular theory. I get that. But in a trial, the government doesn't know typically if the defendant is going to testify. So all this run-up to the trial was there was a lot of discussion about 404B in the government's case in chief. But then Mr. Krasny took the stand. Was there an objection to any impeachment evidence on the 404B? The government didn't use any of this evidence on impeachment. The government did not question Mr. Krasny about any of this. The government has conceded it couldn't prove that Krasny committed these acts, so the government didn't even ask him a single question about it. What about the transcript Judge Roth read you? Excuse me? What about the transcript Judge Roth read to you? I'm sorry, Your Honor. Have you ever at any point in your life used a computer to upload or download? Right. So if the government had said, had tried to impeach him there with this prior acts evidence, which the government did not do, there would have been an objection. And the objection should have been, and we're dealing with just complete hypotheticals here, but the government attempt to do that should have been objected to with that objection sustained because the government has conceded they don't have evidence that he actually committed these prior acts, so it doesn't impeach his testimony that he never did this. It seemed like the central issue in the case was whether the Internet connection that was used for the offenses that were charged were accessed from inside the home or outside the home. Can you comment on that? Yeah. I mean, that was a critical issue in the case. And there was an agreement among the government expert and the defense expert that it would have been possible for Crosley's Internet connection to have been hacked by his neighbors. They disagreed as to the probability of that. He testified in the case. Did he testify? Crosley? Yes, he did, Your Honor. So I'm just wondering, the questions of credibility come up. Isn't that for a jury to determine whether his comments are believable or not? Of course. And in a number of the 404B cases where this court has reversed the convictions, the defendants testified, this court still found 404B error and reversed the convictions. The fact that he testified doesn't somehow excuse the 404B violation in this case. At the same time, you know, a district judge is sitting up there with objections coming in, evidence coming in. You've got to pick out of the air the basis of the objection. I've done it, and it's not easy, particularly if the other side does not particularly help you in what they are saying the theory is. So that the Court of Appeals tends to give a little bit of leeway to the district judge because of the difficulty in this very hectic situation of expressing exactly what occurred. Is this impeachment? Is this 404B? Is it both of them? Is it 404B but strengthened by the impeachment value? And so we give a lot of discretion to the district judge in making that determination. And in reviewing the case, if we feel that perhaps the explanation isn't as exact as it should have been, if you had six weeks to sit down and think about it, we're going to give some discretion to the district judge. Is that appropriate discretion to use in this case? I would suggest not, Your Honor, for a couple of reasons. One, this wasn't a determined, and district judges obviously do have a very hard job, and evidentiary issues come up, and judges have to make decisions on the fly. That didn't occur here. This was raised pretrial. There was briefing on it. There was extensive argument, and then came up again at trial. There was extensive argument on it. The court took a night to decide whether or not to admit this evidence. At first during the trial, he seemed very against admitting it. He recognized it. But in the pre-trial, Mr. Grassley had not said his statement about, I never, ever have used my computer to receive child pornography. And so that is a new element that at the last minute has been tossed in there. Yes, Your Honor, but again, the government never argued that to the district court. I don't believe this court can properly affirm a conviction on a theory that wasn't presented to the district court by the government, that the government isn't even arguing on this appeal. Thank you, Your Honors. Thank you. Mr. Zosmer, I haven't seen you in real life in quite a while now. It's been quite some time, Your Honor, and I hope you're doing well. It's really a pleasure to see all of you. Good morning, Your Honor. May it please the court, Robert Zosmer on behalf of the government. Your Honor, this is a very straightforward case of the admission of 404B evidence to prove a key fact other than propensity, leading the jury to its verdict. Now, the first thing I have to say to sweep aside this business here that's been suggested, that the government has conceded that Mr. Grassley was not involved with these earlier items in 2010, that's not what happened here, and let me just take a minute to explain. What happened was the prosecutor acted with tremendous restraint to limit the 404B evidence only to the non-propensity purpose. And I wish I could take credit for this restraint, but I can't because I didn't try this case. I've tried a few cases, and I don't think I would act with the same restraint that Mr. Glenn did here. I don't know if you know Burt Glenn. He recently retired from our office from a sterling reputation for fairness, and you really see it in this record because what he did was he purposely did not say to the jury at any time, Mr. Grassley had these items in 2010. He admitted that evidence for one purpose, which was to show there was child porn in that house in 2010. He then let the jury connect the dots. Now, if you're asking me, is Mr. Grassley responsible for that child porn in his house in 2010, of course he is. He lived there with his wife. All of these connections were always made over his Internet connection. The evidence is overwhelming. His wife moves out at some point. The activity continues. But what Mr. Glenn did was he let the jury make the conclusion because he wanted to be very careful not to use 404B evidence to say he did it before, he did it again. Was there any actual evidence that he actually viewed child pornography inside his home? Well, the evidence, Your Honor, was that... Or is it all inferential? Well, it depends how you define inferential. This was years on end. Agents observed him, sometimes in real time, downloading child pornography over his Internet connection. They knew from all the records, from the cell phone records, he was in the house at the time. They knew from the poll camera that there was nobody else around. So at some point, an inference becomes a conclusion. And this happened over and over again. There was a Title III intercept, which you don't see too often, of his Internet connection, in which they saw the daily transactions. They saw that this connection to this giga-tribe, this foreign connection for child pornography, was happening on a regular basis except during the days when he was on a cruise or when he was visiting an ill relative in New Jersey. The evidence here is really unquestionable. The one fact that made this a trial was that the agents did not find actual child porn in the house. He was obviously extremely careful in the way he used his computer equipment and did not keep records of what he was looking at on a relatively daily basis. But all the defense had... The idea that he was viewing child pornography in the home is basically inferential. You could say that, Your Honor. And that's where the 404B evidence becomes important. And this is why Judge Smith admitted it for a classic 404B reason. 404B, of course, means it's for a purpose other than propensity. And the purpose here is to show the location of the activity. In 2010, there was child porn material in that house. You can read that internet chat, which is very graphic and goes on for 60 or 70 pages, that was found of a 2010 record. So you know that this material was in the house. This is not common material.  You could go... What makes this relevant, of course, is that I trust that you can go into more than 99% of American homes and find nothing like this. So the fact that it's there is evidence. It is a step in the way. And so the jury then looks at it and says, All right, well, this fellow says that he's trying to blame his neighbor. He says his neighbor, you know, a thousand yards away, somehow has gone out and bought an antenna and is accessing his internet connection. So the jury has to look at this evidence and say, Okay, we know this very unusual fact. There's child porn in this house. And then they take the next step to say it was him and it was consistently him in all the years that followed for all of the charge counts. As I said, this is very classic 404B evidence. Mr. Epstein says there's a propensity inference here at the core of the government's presentation. That's not the case. The thing about 404B evidence, and this court and Judge Fuentes, you've written a number of 404B opinions, so I don't want to suggest that I can state this better, but this court has made very clear that propensity is always an inference that can be drawn from 404B evidence. You can always say, Oh, here's some evidence. He did it before he did it again. What 404B is about is they are also a non-propensity fact that you use it for. And then a properly instructed jury is told, Don't use it for the propensity inference that you might draw from it. This is classic to say that this shows location where child porn material is present. The judge gave the jury the corrective instruction three times telling them, Do not consider this propensity. He's not on trial for 2010. Only use it as evidence in deciding where did the activity take place later. I could stand...  It is, Your Honor. Again, this goes to the restraint that the prosecutor showed. He did not cross-examine him on it. He could have. He could have effectively asked the same question that Your Honor is asking. But it's all fairly obvious that he left it for the jury. Mr. Crassley had other problems in his testimony. He was trying to blame that neighbor. It didn't come off very well. You can even see it in the plain transcript. And then the neighbor was called in rebuttal to promptly disabuse any notion that he was involved in this. But, yes, certainly it could have been used for that purpose. There are reams of decisions of this court allowing the admission of evidence that could go to propensity but is allowed because it goes to some other reason. I'm not going to stand here all day and list them. One very prominent is the Langbord decision, which was an en banc decision of this court. In 2016, the evidence was that the person who was suspected of stealing and hiding coins from the U.S. Treasury had earlier had illegally held coins seized by the Treasury. And the question was, is that 404B evidence to show that he knows you can't illegally hold gold coins at that point in time, which was back in the 1930s, a very interesting case. And this court held that this did not go to propensity. This went to show that he knew that you can't have gold coins and that they're subject to seizure. And it gave him a motive for concealing the coins that were at issue in the case. What about 403? Do we consider this evidence under a 403 lens? Well, 403 always, Your Honor, is part of the 404B analysis. And Judge Smith struggled with this mightily. He struggled, but he analyzed it very carefully and he came to a very clear decision. Mr. Epstein has suggested that the court didn't engage in balancing. I don't know where that assertion comes from. If you look at a couple times that the court ruled on this, beginning on page 129 of the appendix, on page 420, it's a model balancing that Judge Smith engaged in. He also says at 392 and 393, I can see the prejudicial, the prejudice is so substantial there's almost no probative value. And he goes on from there. Right. And then page 420, the judge concludes that the probative value is, quote, high, and then says, quote, it's not unfairly prejudicial given the probative value on the issue of the location of the user of the Internet connection with respect to the child pornography. I don't know what more a reviewing court can ask for other than the court saying that it has high probative value and that there isn't significant prejudicial impact in light of that. There didn't seem to be much of a discussion between the evidence and the Internet. I'm sorry? There didn't seem to be much of a discussion by the court between the evidence that was presented and the Internet. Well, the court actually analyzed it multiple times because it looked at each time the different evidence came up. There were the file names that were found, which was one piece of evidence, that were pretty clearly from their names referring to child porn. And then there was this long Internet chat. And each time the court went through the 404B analysis, and those are the pages that I've given, and I think the balancing is explicit on the record. And then in that situation, as Judge Ropp alluded to earlier, this court gives discretion. This court said in another NBANC decision many years ago in universal rehabilitation that it's sort of the cardinal example of when an appellate court gives deference to a district court, is when it's making a 403 balancing, which is exactly what Judge Smith did in this case. The propensity inference that can be drawn from this, and again, there's always a propensity inference, but it was squelched. It was squelched because it was only offered to show the location, which was the important fact in this case. The judge repeatedly instructed the jury only to consider it in terms of the location. And the prosecutor, as I've said, just went out of his way to make sure that he didn't make a propensity statement. And to only offer this evidence to give the jury the chance. As your honors well know, relevant evidence doesn't mean decisive evidence. Relevant evidence, the advisory committee tells us, I think it's in rule 401, relevant evidence is a brick in the wall. And that's what this was. This was a brick in the wall, and the prosecutor very carefully treated it that way. Here's some evidence to show you, there was child porn in this house. And therefore, you could conclude at a later date, that when constant internet activity is taking place, using the IP address of the router in that house, that the activity is taking place in the house. And not with somebody using some sophisticated antenna a mile away or anything like that. I'm sorry, the evidence regarding the child pornography was not a single weekly or monthly event. We're talking about a period of years, if I'm not mistaken. Yes, your honor, about five years. Five years? That was charged. Five years the government was monitoring the... Yeah, what happened here, your honor, was that there were actually four searches, I believe, of the defendant's house. And each one came up empty in terms of finding evidence. And these agents, to their credit, knew something was happening here, and they were very dedicated. And they kept looking back. That's why they got the Title III intercept. They have to go a lot further than they normally do to show what this very careful person was up to. And they proved it. They proved it with these daily computer records from his internet connection. They proved it by showing he was there. They proved it by showing that nothing was happening when he wasn't there. And then the final search that takes place, your honor, which I think is in December of 2017, after that he doesn't have his internet connection anymore, and the activity stops. There is no more download after that, not from the neighbor, not from anybody else. That's why the evidence is so strong. And, of course, I don't think I have to belabor it, but that's why we make the harmless error argument as well, that given just the incredibly specific and probative case that was put forward by the government, this was harmless error. And then you can add to that, as the court has referenced, the fact that he did testify. And he did sort of implicitly try to blame the neighbor, and it didn't go over very well. And the fact that the jury considered and rejected his testimony is something else that can be considered in the strength of the evidence. And so for all these reasons, we ask that the court affirm unless the court has further questions. Thank you. Again, very good to see you. Mr. Epstein, when I said I was glad to see Mr. Zalesworth, I certainly hope you did not infer that I wasn't happy to see you again, too. Well, thank you, your honor, and I'm very happy to see the three of you. It's an honor and a privilege to be back in the courtroom after all this time. Thank you. Was it harmless? No, your honor. And we have to keep in mind what the harmless error standard is. This court has to conclude that there is a high probability that this evidence did not contribute to the verdict. This court has to have, as the court has said, a sure conviction that this evidence did not prejudice Mr. Krause and contribute to the verdict. There was a gaping hole in the government's evidence in this case. They searched this man's home four times, and they found not a single image of child pornography. They didn't find any evidence of the charges offenses. Four times they searched, four times they came up with nothing. As Judge Smith said, this is the only evidence that possibly puts child pornography in this man's home. This evidence was vital, and you have to look at it from the government's point of view. If it wasn't vital, when Judge Smith said when they first brought it up for trial, this looks like propensity to me, this is extremely prejudicial, yet they fought to get it in. They took the risk, notwithstanding this court's seven cases reversing convictions for the erroneous admission of 404B evidence. The government took the risk of admitting it, and that really tells you all you need to know about the weakness that was inherent in the government's case without it. I'm not sure that's true, Mr. Epstein. Mr. Zalzmer just recited it, and in preparing, I read the testimony and the description of the various steps that were taken to determine when pornography was being sent to the house, when Mr. Crassley was in the house. The fact that he would go on a trip, and he would stop, he'd come back, it would start right up again. And the fact that the neighbor was 1,000 yards away, and was it 1,000 feet or 1,000 yards? Anyway, the neighbor was not close by, and there was a lot of investigation done of, is it likely that someone else nearby could have been intercepting this through Mr. Crassley's computer? And there is an awful lot of evidence about what was happening when Crassley was there and when he wasn't there that could certainly determine in the jury's mind that he was the one receiving this stuff. And there was the fact that he took the stand, and they could interpret his testimony not as the truth, but as prevarication, which would be another brick in the wall for conviction. I see my comments running out. May I respond, Your Honor? There are several points that Your Honor has made there that I'd like to respond to. First, in terms of the circumstantial evidence that when Crassley wasn't at the house, there was no connections to any material, and when he was home, there was, and that perfectly lines up. It does not, and we set that forth in our brief. There were multiple periods of time where, for multiple days, Crassley is home and there's no connections being made. So the fact that he was away for a few days and no connections were made during that period of time really tells us nothing. As far as whether there was sufficient evidence to convict here, of course, we didn't make a sufficiency challenge. In all of the cases reversing 404B convictions where 404B evidence played a role, as in this case, the evidence was sufficient in those cases. In fact, in Brown and in Cardwell, this Court said the evidence was actually very strong against the defendant in those cases, but this Court did not have a sure conviction that the 404B evidence did not contribute to the verdict. And the reason why this Court has repeatedly said this kind of prior acts evidence is just so prejudicial when it's erroneously introduced. Isn't that a matter for the jury to determine? I mean, when they have the ability to determine the credibility and the appearance of the witness as he testifies, aren't they in the position to make that determination? The problem is, Your Honor, that the jury is making that determination with prior acts evidence that was erroneously admitted. The question is, we don't know what the verdict would have been if this evidence was properly excluded. Is there an objection to the evidence? Yes, there was, repeatedly. This was extremely well preserved. Thank you, Mr. Epstein. Thank you. I thank both counsel for their arguments and their briefs. We will take this matter under advisement.